JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Raymond Patton ("Patton"), appeals his conviction. Finding merit to the appeal, we reverse.
 {¶ 2} In 2006, Patton was charged with burglary and obstructing justice. He waived his right to a jury trial, and the following evidence was adduced at his bench trial.
 {¶ 3} Patton was employed as an institutional guard ("IG") in the Cleveland jail. On March 12, 2006, Cleveland police arrested Fahed Abdel Aq for disorderly conduct and assault. Abdel Aq gave the police the identification ("ID") of Mustafa Abed. Abdel Aq testified that he was so intoxicated that he did not remember giving his ID to the police, but when he later realized he had been booked under the wrong name, he decided to let the police believe he was Mustafa Abed. When Abdel Aq's brother tried to post bond for him under Abed's name, Abdel Aq was unable to provide the police with Abed's correct information. The police discovered that Abdel Aq had given them incorrect information, searched his belongings, and discovered his correct ID.
 {¶ 4} Shortly after Abdel Aq was booked into the jail, Patton received a phone call from an acquaintance, "A.J.," who asked whether his employee, Mustafa Abed, had been charged and what bond was required for his release. Patton then went to Abdel Aq's cell to give him A.J.'s phone number. *Page 4 
 {¶ 5} The next day, Abdel Aq's brother came to the jail and inquired how to post bail for his brother, Mustafa Abed. Patton, who was stationed at the guard shack that day, called from the guard shack to inquire whether Mustafa Abed was still in jail. Later that day, during a break, Patton was inside the jail and saw the booking card for Mustafa Abed. He inquired about the prisoner's pending release. He was told that Mustafa Abed's real name was Fahed Abdel Aq and he was not being released because he had provided false information to the police. Patton testified that he then went into the jail and told Abdel Aq that he and his brother were in trouble and that he would be facing additional charges for falsification.
 {¶ 6} The next day, Patton was on duty and received another call from A.J. who wanted to know Abdel Aq's status because he was scheduled to work. On his break, Patton went and retrieved Abdel Aq's booking card. He informed Abdel Aq of the new charges, and Abdel Aq asked to use the phone. Patton took him from his cell to the phone booth. Patton testified that he did not have the key to the phone booth, so he put Abdel Aq in the nurse's office while he went for the key. He further testified that as he was returning with the key, Sgt. O'Neill approached the nurses' station and saw Abdel Aq sitting inside. Sgt. O'Neill, to the contrary, testified that he was taking a detective to the nurses' station to interview another prisoner. He testified that when he opened the door he saw Patton and Abdel Aq in the room together and Patton was holding Abdel Aq's booking card. *Page 5 
 {¶ 7} Sgt. O'Neill also testified that when he originally confronted Abdel Aq about his identity, the prisoner told him that Patton had already told him not to worry about giving false identification, that he could just clear the matter up in court. Both Patton and Abdel Aq testified to the contrary, asserting that Patton did not know about Abdel Aq's false identity until after Sgt. O'Neill discovered it, and they denied that Patton told Abdel Aq to wait and clear up the matter in court.
 {¶ 8} Sgt. O'Neill sent Patton to see a supervisor, who required that he complete a formal incident report. Patton wrote, in pertinent part:
 {¶ 9} "[On March 13, Abdel Aq] asked about his assault case that was pending. He stated that the arresting officers booked him under the wrong name. I stated to [arrested male] that whomever's name you were booked under now becomes your alias. I also stated that whenever he was released from jail that he would have to clear himself as being known to have an alias name."
 {¶ 10} When asked on cross-examination about the inconsistencies between the statement and his trial testimony, Patton testified that he was ordered to write what was in the statement. Lt. Cavett, who signed off on the statement, testified on rebuttal that she never told Patton what to write or made him change the statement.
 {¶ 11} Sgt. O'Neill testified that if any IG knew that a person had been booked under a false name, they were required to tell a supervisor. He testified that Patton aided Abdel Aq by being silent and failing to tell a supervisor when he first discovered the prisoner's false identity. *Page 6 
 {¶ 12} Sgt. O'Neill further testified that, at the time the incident occurred, there was nothing that prohibited an IG from being in an area of the jail other than where he was assigned, "pulling" booking cards, escorting prisoners to the phone, or being in the nurses' station.
 {¶ 13} The trial court acquitted Patton of burglary but found him guilty of obstructing justice, a first degree misdemeanor. Patton was sentenced to six months in jail, but the court suspended the sentence and ordered him to spend two weekends in jail and serve three years of probation.
 {¶ 14} Patton now appeals, raising three assignments of error.
 {¶ 15} In his first assignment of error, Patton argues that there was insufficient evidence to convict him of obstructing justice and that his conviction was against the manifest weight of the evidence.
 {¶ 16} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. *Page 7 
 {¶ 17} Patton was charged with obstructing justice in violation of R.C. 2921.32,
which states in pertinent part:
 "No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime or to assist another to benefit from the commission of a crime, * * * shall do any of the following: * * *
 {¶ 18} (2) Provide the other person or child with money, transportation, a weapon, a disguise, or other means of avoiding discovery or apprehension; * * *."
 {¶ 19} The State's theory was that by remaining silent, Patton assisted Abdel Aq in hiding his true identity by providing him with means of avoiding discovery. The State argued that it was not just Patton's silence, but also his other actions that hindered the police in discovering Abdel Aq's true identity. Those actions included asking questions about Abdel Aq's status in the jail, being in areas of the jail other than to which he was assigned, looking at and "pulling" his booking card, taking him to use the phone, and placing him in the nurses' station.
 {¶ 20} In viewing the evidence in a light most favorable to the State, we do not find that the elements of obstructing justice have been met in this case. Fist we cannot find that Patton, with purpose to hinder the discovery of Abdel Aq's true identity, provided him with any means of avoiding discovery. If we believe the State's version of events, Abdel Aq told Patton that he had given the police an alias and Patton advised him to clear the matter up in court. Patton then failed to tell his supervisor that he had found out that Abdel Aq was in the jail under a false identity. Although Patton may have violated the policies and procedures of his employer and *Page 8 
was admittedly negligent in performing his duties, we cannot find that his inaction rises to the level of criminal conduct by providing a means of avoiding discovery.
 {¶ 21} The testimony revealed that an IG acted as a liaison between the prisoners and the supervising staff, and the prisoners often requested items or assistance from an IG. Sgt. O'Neill testified that, at the time of the incident, there was no policy against entering the nurses' station, removing prisoners from their cells to use the phone, viewing booking cards, or any prohibition against an IG being on a floor other than that to which he was assigned. Moreover, we find it undisputed that Patton's action of taking Abdel Aq's booking card, removing him from his cell and taking him to the nurses' station occurred after the police discovered Abdel Aq's true identity. Although there was conflicting testimony regarding whether Patton knew of the falsification before his supervisors did, we find no evidence that he unlawfully assisted Abdel Aq.
 {¶ 22} Therefore, finding that the State provided no evidence that Patton was attempting to help Abdel Aq hide his identity or otherwise hinder the police investigation into his identity, we sustain the first assignment of error. Because we find insufficient evidence to sustain Patton's conviction, we need not address whether his conviction was against the manifest weight of the evidence. The other assignments of error, which challenged Patton's written statement and the effectiveness of his counsel, are also moot.
 Accordingly, judgment reversed and conviction vacated. *Page 9 
It is ordered that appellant recover of said appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ANN DYKE, J., and MARY J. BOYLE, J., CONCUR. *Page 1